IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

D&K VENTURES, LLC, )
)
           Plaintiff, )
)
v. ) Case No. 09-2084-JWL
)
MGC, LLC; HURST CONSULTING, LLC; )
AUSTIN HURST; and ZACHARY HURST, )
)
           Defendants. )
)
_____)

## MEMORANDUM AND ORDER

Plaintiff D&K Ventures, LLC ("D&K") has brought suit against defendants MGC, LLC ("MGC"), Hurst Consulting, LLC ("Hurst"), Austin Hurst, and Zachary Hurst, in which D&K asserts claims relating to its written agreement with MGC by which D&K would invest money in, and receive income from, a multi-level marketing program. Plaintiff asserts statutory claims under the federal Securities Act, the federal Securities Exchange Act, and the Missouri Securities Act. Plaintiff also asserts state-law tort claims for fraud and negligent misrepresentation. The matter presently comes before the Court on defendants' motion to dismiss the state-law claims pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 9). For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is granted with respect to defendants' argument that plaintiff did not plead these claims with sufficient particularity pursuant to Fed. R. Civ.

P. 9(b); the claims are dismissed, but plaintiff is granted leave to amend those allegations on or before **June 8, 2009**. The motion is denied in all other respects.

## I. Standards for Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## II. Allegations of the Complaint

In its complaint, plaintiff D&K has alleged the following facts:

D&K is a Missouri limited liability company whose only members are Dave Feyerabend and Kelly Yarborough. Defendants Austin and Zach Hurst are believed to be the only members of Hurst, a Kansas limited liability company. One or more of those defendants are believed to be the only members of MGC, a Missouri limited liability company. Beginning in August 2008, defendants approached plaintiff and its members to solicit their involvement in a new multi-level marketing venture to be known as "My Green Circle."

During a meeting on September 2, 2008, defendants[1] made the following representations to plaintiff:

    a.    That Green Circle would be a "so-called multi-level marketing venture;

    b.    That Green Circle/MGC would sell an "informative" DVD of thirty minute duration, highlighting the benefits of what were described as "Social Networks" and/or "Viral Marketing";

    c.    That Austin, Zach, Hurst, MGC and/or Hurst's officer/employee Awan had developed a unique and proprietary "web-based system" which would provide those persons who visited MGC's Green Circle website with an equally unique "referral link";

---

[1] In its complaint, plaintiff consistently alleges representations made by one or more of a group including defendants and an employee of Hurst, Asim Awan, that were made to "D&K, Feyerabend and/or Yarborough." For ease of reference in this opinion, the Court refers to such alleged representations as having been made by defendants to plaintiff.

3

    d.      That this proprietary "web-based system" of marketing would involve a "participant site" which MGC/Green Circle would use to market the DVD to recruit new participants, to track sales, to transfer money and to communicate with so-called "down line" participants.

(Complaint ¶ 14.)

During the meeting on September 2, 2008, defendants provided plaintiff with an Information Sheet that contained the following representations:

    a.      That Green Circle/MGC was to be "an online company" that promoted a "DVD that teaches viewers about viral marketing";

    b.      That MGC had "created the DVD in-house and" would be "selling the DVD on" what was described as "the website";

    c.      That MGC would offer "visitors to the website the ability to enroll in a program by which they [would] be compensated for referring other individuals to purchase the DVD";

    d.      That "in order to receive a DVD, a user" would be required to "pay $12.99" and that "[i]n order for a use to benefit from the program", the user would be required to "register an account and refer other members" who would themselves "purchase a DVD";

    e.      That for "every DVD purchase referral", there would be "a credit of $1.50 added to the referrers account" [sic] and that MGC would pay these credits to referrers once a month either "directly into Paypal accounts" by "traditional ACH wire transfer[]" or "in the form of a check" at the user's option.

(Complaint ¶ 17 ([sic] added).)  The Information Sheet contained a pyramid that purported to depict graphically the "potential opportunity" represented by the program. (Complaint ¶ 18).  The Information Sheet also included a series of ratio-based

4

calculations identified as a "Projected Financial Statement," which contained the following representations:

    a.    That in six months of operations, the number of persons "participating" in, i.e. "signing up" for, MGC's multi-level marketing scheme would increase from 1,000 participants to **32,768,000** participants;

    b.    That in six months of operations, the number of "new" participants "signed-up" each month would increase from 1,000 to **28,672,000** participants;

    c.    That in six months of operations, MGC's gross revenue could increase from $12,990 in "Month 1" to **$254,332,109**;

    d.    That in six months of operations, MGC's "net revenue" would increase from $11,490 in "Month 1" to **$211,324,109** in "Month 6".

(Complaint ¶ 19 (emphasis in original).)

On September 5, 2008, Mr. Awan, as an officer of Hurst, sent plaintiff an e-mail that included additional projections. The e-mail contained the following representations:

    a.    That the "updated projections" which were attached were based upon otherwise unspecified "new found information";

    b.    That "the original projections that were shown" to D&K "earlier [that] week" was the "main one to focus on";

    c.    That these earlier projections were and remained "the conservative and more realistic projection [sic] based on all people participating at the same level";

    d.    That, nevertheless, in the projections which Hurst/Awan had "done now", it/he had "assumed that people" would enter, i.e. participate in MGC's multi-level marketing scheme, in or at "different levels";

5

      e.      That "based on the new projections, the net revenue [had] increased by approximately $75 [million]"; and

      f.      That although these were "projections", they "should nevertheless "give" D&K "a good idea of how things work out based on what" Awan, Hurst, MGC, Austin and Zach were "expecting".

(Complaint ¶ 22 ([sic] added).)  The attached projections included the following representations:

      a.      Under Hurst/Awan's "Level II Referral" scenario, MGC's total members/participants would increase from 1,000 in Month 1 to 266,605,691 in Month 6 or roughly 37,000,000 less than the total estimated population of the United States;

      b.      MGC's total revenue would increase from $3,990 in Month 1 to $1,045,983,016 in Month 6; and

      c.      MGC's net revenues would increase from $3,591 in Month 1 to $941,384,714 in Month 6.

(Complaint ¶ 23.)

During the period of time from September 2, 2008, to September 12, 2008, defendants also made the following representations to plaintiff:

      a.      That through an investment of $115,000, D&K would acquire a 2% ownership in and of MGC and Green Circle;

      b.      That other investors were being solicited and that for each investment of $75,000, the investor would receive 1% of the ownership of MGC and Green Circle;

      c.      That MGC would launch Green Circle on the internet on October 1, 2008;

      d.      That the development and testing of the system, hardware and/or software that was to be and constitute MGC's

>   unique, multi-level marketing system had been comprehensive and was nearly complete, and that such further development and testing as was necessary was fully on schedule; and
>
>   e.   That the promoters and persons in charge of MGC were highly experienced in "web" marketing and in "multi-level" marketing, that they were highly skilled in web design and implementation and that the concepts, devices, features and/or mechanisms which they intended to employ in the design of MGC's "website" were novel, attractive, useful, utilitarian and user friendly.

(Complaint ¶ 24.)

"At some time during the period of September 2, 2008 through September 12, 2008," plaintiff entered into "and purchased" an "Investment Agreement" with defendants, and plaintiff paid $115,000 in exchange for that agreement. Plaintiff attached the Investment Agreement to the complaint and incorporated the document by reference. The agreement states that it "is made this 2nd day of September, 2008," between D&K and MGC. In the agreement, D&K agrees to pay $115,000 to MGC, and MGC agrees to pay D&K a portion of its net income from the "My Green Circle" program. The agreement provides that D&K does not gain any membership interest in MGC. The agreement also contains the following paragraphs:

>   8.   <u>Entire Agreement & Amendments</u>.  This Agreement constitutes the entire agreement of the parties hereto concerning the matters addressed herein, and shall supersede any prior or contemporaneous agreements, understandings, representations, negotiations, or communications between the parties concerning such matters.  There are no other agreements or understandings between the parties concerning the matters addressed

>    herein. In reaching this Agreement, the parties hereto are not relying upon any representation of any other person or entity other than the representations made in this Agreement. This Agreement may be amended or modified only by a written agreement of amendment signed by the parties hereto.
>
>    . . .
>
> 10.   <u>Company Earnings Disclaimer</u>. Company [MGC] makes no representations or warranties regarding any expected or anticipated future Net Revenue, Net Income, or any other related earnings from My Green Circle and Company expressly disclaims any such representations or warranties. Investor [D&K] agrees and acknowledges that Company has made no representations or warranties regarding expected or anticipated future Net Revenue, Net Income, or any other related earnings from My Green Circle.

The launch of the My Green Circle website was delayed until October 10, 2008. The website proved unsuccessful, and defendants subsequently launched a new site with different products and programs. Plaintiff has not received any of the promised income under the agreement, and defendants have not responded to plaintiff's demand for the return of the $115,000 that it paid.

In Count I of the complaint, plaintiff has asserted claims under the federal Securities Act, 15 U.S.C. §§ 77a *et seq.*, and the federal Securities Exchange Act, 15 U.S.C. §§ 78a *et seq.* In Count II, plaintiff asserts a claim under the Missouri Securities Act, Mo. Rev. Stat. §§ 409.1-101 *et seq.* In Count III, plaintiff asserts a claim for intentional fraud, based on the representations alleged in paragraphs 17, 18, 19, 22, 23, and 24 of the complaint. Plaintiff alleges that the representations were false for the

8

reasons set forth in paragraphs 40 and 46 of the complaint. In those paragraphs, plaintiff states specific reasons why particular representations (those contained in paragraphs 14a, 14c, 19a-d, 22c-f, 23a-c, 24a-e) were false or fraudulent. Plaintiff also alleges in Count III that defendants intended that plaintiff act on those representations by its "purchase" of the Investment Agreement. In Count IV, plaintiff asserts a claim for negligent misrepresentation based on the same alleged representations that form the basis for Count III.

### III. Analysis

#### A. *Agreement's Disclaimer of Reliance*

Defendants move to dismiss plaintiff's state-law tort claims[2] for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). As their first basis for dismissal, defendants argue that the disclaimers contained in the parties' written agreement preclude plaintiff's reasonable reliance on defendants' alleged misrepresentations as a matter of law. *See, e.g.*, *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 154

---

[2]The parties have assumed, without analysis, that Missouri law governs D&K's state-law claims. The Court applies the choice-of-law rules of its own state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Kansas law, tort actions are governed by the law of the state in which the tort occurred, that is, the state in which the wrong was felt. *See Ling v. Jan's Liquors*, 237 Kan. 629, 634-35, 703 P.2d 731, 735 (1985). In a tort case alleging financial injury, that plaintiff feels the wrong in the state in which he resides. *See, e.g.*, *Thomas v. Talbott Recovery Sys., Inc.*, 982 F. Supp. 794, 798 (D. Kan. 1997). Plaintiff alleges that its place of business is in Missouri, where it is registered as a limited liability company. Accordingly, the Court agrees that, on the record before it, Missouri law should govern plaintiff's tort claims.

(Mo. 2007) (elements of claim for fraudulent misrepresentation include "the hearer's reliance on [the representation's] truth, and the right to rely thereon"); *Ryann Spencer Group, Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 288 (Mo. Ct. App. 2008) (elements of negligent misrepresentation include the listener's justifiable reliance). Specifically, defendants cite (1) the statement in paragraph 8 of the agreement that the parties are not relying on any outside representation, and (2) MGC's disclaimer (and D&K's acknowledgment) in paragraph 10 of the agreement, which states that MGC has made no representations concerning expected revenue or earnings. Defendants have not cited any Missouri cases to support this argument.

Plaintiff relies on the following general rule regarding such disclaimers: "Missouri law holds that a party may not, by disclaimer or otherwise, contractually exclude liability for fraud in inducing that contract." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 767 (Mo. 2007) (quoting *Lollar v. A.O. Smith Harvestore Prods., Inc.*, 795 S.W.2d 441, 448 (Mo. Ct. App. 1990)); *accord Maples v. Charles Burt Realtor, Inc.*, 690 S.W.2d 202, 212 (Mo. Ct. App. 1985). The application of this rule would appear to dispose of defendants' argument, at least with respect to the fraud claim in Count III.

Defendants respond (again without citation to Missouri law) by attempting to distinguish the present case as one involving not merely a general merger clause, but also a disclaimer relating to specific representations about earnings. In fact, in one case, the Missouri Supreme Court upheld a trial court's finding that a defendant seller had

10

adequately disclaimed any prior representations concerning the actual acreage of the land being sold to the plaintiff. *See Luli Corp. v. El Chico Ranch, Inc.*, 481 S.W.2d 246, 255-56 (Mo. 1972). In *Luli Corp.*, the court noted that the seller's "frank disclaimer . . . of any personal knowledge with respect to acreage" was "positive, direct, and to the point, even disclosing the source of the questioned representation." *Id.* at 256. The most the seller had represented in that case, therefore, was that he had *information* concerning the acreage; he made no assertion of that acreage as a fact. *Id.* at 255. In later cases, the Missouri Court of Appeals has distinguished *Luli Corp.* as a case involving the explicit disclaimer of specific representations, as opposed to the boilerplate disclaimers present in those later cases. *See Lollar*, 795 S.W.2d at 448; *Maples*, 690 S.W.2d at 213.

In the present case, the agreement's separate and specific disclaimer concerning earnings might fall within the scope of *Luli Corp.*, as that case has been distinguished by the Missouri Court of Appeals, and might therefore serve to rebut an allegation of reasonable reliance on the alleged misrepresentations specifically involving projected earnings. In *Luli Corp.*, however, the Missouri Supreme Court merely upheld a trial court's factual findings against the plaintiff; it did not hold that the disclaimer precluded the plaintiff's reasonable reliance as a matter of law. Thus, even if defendants could circumvent the general rule regarding disclaimers in some way, with respect to some of the alleged misrepresentations, they have not provided any authority for the proposition that plaintiff cannot establish reasonable reliance as a matter of law. Accordingly, the court rejects this basis for dismissal of plaintiff's fraud claim.

11

A panel of the Missouri Court of Appeals has concluded that the same general rule against disclaimers applies also to negligent misrepresentation claims. *See Cabinet Distributors, Inc. v. Redmond*, 965 S.W.2d 309, 314 (Mo. Ct. App. 1998). The Eighth Circuit Court of Appeals, however, has stated that it is "not at all confident that if presented with the question the Supreme Court of Missouri would adopt the broad ruling in *Cabinet Distributors*." *Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc.*, 178 F.3d 1030, 1033 (8th Cir. 1999). This Court need not determine how the Missouri Supreme Court would answer this question at this time, however. Even if the general anti-disclaimer rule did not apply to some or all of the negligent misrepresentations alleged here (either by law or on the facts in light of *Luli Corp.*), there is no basis to conclude that plaintiff cannot have reasonably relied on such misrepresentations *as a matter of law*. Therefore, the Court also rejects defendants' disclaimer argument as it relates to Count IV.

Finally, defendants suggest that plaintiff cannot have reasonably relied on defendants' alleged misrepresentations, as a matter of law, in light of plaintiff's allegation that defendants' projections were "completely unrealistic." The Court rejects this argument as well. Plaintiff has not conceded in its complaint that the projections were objectively unrealistic, or unrealistic in plaintiff's eyes. Thus, viewing all inferences in plaintiff's favor, the Court concludes that plaintiff has sufficiently pleaded satisfaction of its tort claims' reasonable reliance element, and defendants' motion to dismiss is denied to that extent.

12

### *B.    Statements of Opinion*

As its second basis for dismissal of Counts III and IV, defendants argue that their alleged misrepresentations concerning projected earnings do not constitute representations of fact, as required, but instead constitute mere opinions. The Missouri Supreme Court has noted that a plaintiff may not base its fraud claim on a statement of opinion:

> In order for a petition to state a claim for fraudulent misrepresentation it is necessary for the petition to allege a representation that is a statement of fact. On the other hand, expressions of opinion are insufficient to authorize a recovery for fraudulent misrepresentation because such expressions are deemed not to be material to a transaction. Puffing of wares, sales propaganda, and other expressions of opinion are common, are permitted, and should be expected. Those in the marketplace should recognize and discount such representations when deciding whether to go through with a transaction. If the trial court correctly determined that the representation alleged in the petition in this case was only an expression of opinion, then plaintiffs' petition failed to allege a material misrepresentation and it should have been dismissed for failure to allege all the elements of fraudulent misrepresentation.

*Clark v. Olson*, 726 S.W.2d 718, 719-20 (Mo. 1987) (citations omitted). The Missouri Court of Appeals has generally applied the same rules regarding fraud claims to claims of negligent misrepresentation. *See Ryann Spencer Group*, 275 S.W.3d at 291.

The projections alleged by plaintiff as misrepresentations in paragraphs 19 and 23 of the complaint must be considered opinions that ordinarily would not support a misrepresentation claim. Plaintiff cites the following exception under Missouri law, however:

> A representation of opinion only amounts to fraud if the

13

> representing party has, or holds himself out to have, special knowledge as to the value; and the representing party, knowing the other party is ignorant, makes a false representation as to value intending it to be relied on. The same rule applies to other representations of opinion, *such as future projections*.

*Arnold v. Erkmann*, 934 S.W.2d 621, 627 (Mo. Ct. App. 1996) (citations omitted) (emphasis added); *see also Dancin Dev., L.L.C. v. NRT Missouri, Inc.*, __ S.W.3d __, 2009 WL 1120315, at *3 (Mo. Ct. App. Apr. 28, 2009) (quoting *Arnold*). In paragraph 24 of the complaint, plaintiff has alleged that defendants represented that they were highly skilled and experienced with respect to the web-based multi-level marketing program at issue here. Accordingly, plaintiff has sufficiently pleaded causes of action for misrepresentation based on defendants' statements of projected earnings that fall within the "special knowledge" exception under Missouri law, and defendants' motion to dismiss is denied to that extent.

### C. *Pleading Fraud with Particularity*

Finally, defendants argue that Counts III and IV are subject to dismissal under Fed. R. Civ. P. 9(b), which provides that in alleging fraud, a party must state the circumstances constituting fraud with particularity. To comply with the rule, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).

In Counts III and IV, plaintiff claims as misrepresentations the statements alleged

14

in paragraphs 17, 18, 19, 22, 23, and 24 of the complaint.[3] In the first five of those paragraphs, the alleged statements appeared in written documents given to plaintiff on particular dates. In paragraphs 40 and 46 of the complaint, plaintiffs has set forth reasons why some of those alleged misrepresentations were false. There are no such allegations, however, explaining how the representations alleged in paragraphs 17, 18, 22a, and 22b were false or fraudulent. Thus, plaintiff's fraud claim runs afoul of Rule 9(b) to the extent based on those alleged representations.

Moreover, plaintiff has pleaded that the representations alleged in paragraph 24 of the complaint were made "during the period of and from September 2, 2008 through approximately September 12, 2008," without giving the precise dates or circumstances of the particular representations. As defendants note, in light of that failure and plaintiff's further allegation that it entered into (or "purchased") the Investor Agreement at some indefinite point within the same time period, it cannot be determined which representations preceded (and thus contributed to) plaintiff's execution of the agreement.[4] Plaintiff, citing *Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc.*, 178 F.3d 1030, 1033 (8th Cir. 1999), argues that it need not identify which

---

[3] Although plaintiff's statutory claims stated in Counts I and II appear to be based also on the representations alleged in paragraph 14 of the complaint, Counts III and IV do not refer back to that paragraph.

[4] In its opposition brief, plaintiff states that even though the agreement recites that it was "made" on September 2, 2008, plaintiff actually entered into that agreement at some point after that date, between September 2, 2008, and September 12, 2008, as it alleged in the complaint.

15

representations preceded the agreement because post-contract misrepresentations may support a cause of action. In *Forklifts*, however, the plaintiff's reliance and damages for such post-contract misrepresentations did not necessarily relate to the formation of the contract. *See id.* In the present case, plaintiff has alleged no other acts taken in reliance on the alleged misrepresentations other than execution of the written agreement. The Court therefore concludes that plaintiff has not alleged its misrepresentation claims with sufficient particularity to the extent that it is unclear which alleged misrepresentations were made prior to plaintiff's execution of the written agreement.

Moreover, with respect to the misrepresentations alleged in paragraph 24, plaintiff has not sufficiently identified the persons by whom and to whom the statements were made. Plaintiff relies on *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997), in which the court held that the plaintiff's failure to match specific misstatements with specific officers or directors of the defendant did not violate Rule 9(b) in that case. The court in *Schwartz*, however, based that ruling on its conclusion that "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers." *Id.* Although the other alleged misrepresentations were contained in documents attributed to the corporate defendants, the representations set forth in paragraph 24 of the complaint are not alleged to have been made in written form. Accordingly, there is no basis not to apply the Tenth Circuit's usual standard for

compliance with Rule 9(b), and the Court concludes that the allegations in paragraph 24 are also deficient in failing to identify the particular parties involved in those statements.

The parties have not addressed whether Rule 9(b) applies also to claims for negligent misrepresentation. The federal courts of appeal appear to be split on the question, which the Tenth Circuit has not addressed. *Compare, e.g.*, *Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2nd Cir. 2005) (rule does apply), *with General Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396 (5th Cir. 2005) (refusing to apply rule). The Court declines to resolve that split here. In this case, in Count III and Count IV plaintiff has referred back to the same factual allegations of representations by defendants and the same reasons why those representations were false or fraudulent. Thus, in amending those factual allegations as they support the fraud claim, in order to comply with Rule 9(b), plaintiff will necessarily elaborate on the bases for his negligent misrepresentation claim as well. *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (although Rule 9(b) does not apply to negligent misrepresentation claims by its terms, court applies the rule where the fraud and negligent misrepresentations claims are based on the same set of alleged facts).

Accordingly, in asserting the claims contained in Counts III and IV of its complaint, plaintiff has failed to comply with Rule 9(b), as set forth herein, and defendant's motion to dismiss those two claims is granted on that basis. The Court grants plaintiff leave to amend its complaint, however, to comply with the rule. Plaintiff shall file any such amended complaint on or before **June 8, 2009**.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to dismiss Counts III and IV of the complaint (Doc. # 9) is **granted in part and denied in part**. The motion is granted with respect to defendants' argument that plaintiff did not plead those two counts with sufficient particularity pursuant to Fed. R. Civ. P. 9(b); the claims are dismissed, but plaintiff is granted leave to amend those allegations on or before **June 8, 2009**. The motion is denied in all other respects.

IT IS SO ORDERED.

Dated this 27th day of May, 2009, in Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge